AUGUST MULLER, RESPONDENT, *v.* JOHN McKESSON AND DANIEL C. ROBBINS, APPELLANTS.

*Ferocious animals — liability of owner of.*

The plaintiff, who was employed in the defendants' factory, while passing through the yard, early in the morning to admit the other operatives to the factory, was attacked and severely injured by a large Siberian bloodhound, owned by the defendants, and of whose vicious habits and dangerous character they had full knowledge. The dog was kept chained during the day, and let loose at night; it being the duty of the defendants' engineer to chain him up before the workmen were admitted.

Upon the trial of this action, brought to recover damages for the injuries so sustained, it was insisted that, as the accident occurred through the negligence of a co-servant in omitting to chain up the dog, and as the plaintiff had knowledge of its vicious habits, he could not recover. *Held*, that the defense was properly overruled.

Duties and liabilities of owners of ferocious and vicious animals considered.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

*Charles H. Mundy*, for the appellants.

*F. A. Ward*, for the respondent.

DYKMAN, J. :

This is an action to recover damages for the bite of a dog. The plaintiff was in the employ of the defendants in their chemical factory in the city of Brooklyn, where they kept a large Siberian

bloodhound as a watch dog. The dog had been purchased for the defendants by their superintendent a short time before he bit the plaintiff, and was kept in the yard of the factory, chained by day and loose by night. It was a part of the duty of the plaintiff to open the gate of the factory yard in the morning, for the purpose of admitting the operatives into the yard and factory. On the morning of October 21, 1873, as the plaintiff was returning from the gate after opening it, he was attacked by this dog, thrown to the ground bitten on his posterior, on his arm, and on his ear; the lacerations were quite deep and severe, and the injuries were quite painful. The dog had before this bitten the superintendent of the defendants, and he had informed the general agent of the defendants of the fact, and when the superintendent purchased the dog for the defendants he was told that the dog was bad and would bite. After the plaintiff was bit he was attended by a physician until he was convalescent, but his hand is permanently disabled.

The cause came on to be tried at the Circuit, and the foregoing facts were entirely uncontradicted. At the close of the testimony, the court decided that the defendants were liable, and that the action was made out against them, and refused to submit any thing to the jury except the question of damages. That question was submitted to the jury, and a verdict was found in favor of the plaintiff for the sum of $1,500.

The defendant has appealed from the judgment entered upon the verdict, and has made no application for a new trial either on the minutes or at Special Term. Only questions of law, therefore, can be examined, and the questions which must be examined and determined are, is the plaintiff entitled to recover in the action, and did the judge at the Circuit do right in refusing to leave any question to the jury, except the question of damages?

The common law of England and America has established a doctrine in relation to the rights, duties and liabilities of the owners of domestic animals, which is wise and just and even-handed in its operation, both as to society and individuals. By this law dogs, horses, and all animals which are domestic in their nature, are placed on the same ground, and any person may keep any of them for his use, his pleasure or his protection, or for any lawful purpose that his tastes or inclinations may dictate; and such keeping is perfectly law-

ful until some vicious propensity is developed and brought to the knowledge of the owner; but after such development and such knowledge the owner is liable for all the injuries which the animal may perpetrate in obedience to such propensity.

A distinction is made between animals *feræ naturæ*, of a ferocious or mischievous nature, and animals *mansuetæ naturæ*, of a ferocious and mischievous disposition. In relation to the former, if they are liable to attack or injure human beings, a recovery can be had against the owner for an injury by them without proving the *scienter*, while in relation to the latter no recovery can be had without proving previous knowledge of the vicious propensity of the animal. The same legal rights exist to keep animals of the former kinds as of the latter, the only difference being that as to the first the owner is amenable without notice of their vicious propensities, while as to the latter notice or knowledge is required; and the justness of this distinction is obvious at once. Domestic animals are kept for the pleasure and profit and the comfort and convenience of mankind. Their natures are not ferocious; on the contrary ferocity is the exception to their general habits and disposition, which are generally kind and confiding, and not uncommonly even affectionate, obedient and patient.

> "The ox toils through the furrow
>     Obedient to the goad;
> The patient ass, up flinty paths,
>     Plods with his weary load.
> With whine and bound the spaniel
>     His master's whistle hears;
> And the sheep yields her patiently
>     To the loud clashing shears."

As therefore the owners of these animals have no reason to apprehend that they will act in any way contrary to their domestic habits, and the docility and kindness of their disposition, he is under no obligation to confine them or take any measures to prevent them from doing injury to mankind, until he has notice or knowledge that they have developed some vicious propensity. Until then there is no principle of reason or justice upon which the owner can be made liable. He does no wrong himself, and he has no reason to apprehend that any wrong or injury will be done by his animal. But after he has notice or knowledge that his domestic animal has

developed and disclosed a vicious or ferocious disposition to injure mankind or other domestic animals, then it is his duty, if he continues to keep the animal, to secure it in such a way as to render it incapable of mischief. Such animal is then placed by the law on the same footing with a ferocious wild beast, so far as proving the *scienter* is concerned in an action for an injury which it perpetrates, and he must, at his own peril, keep it safe, for if it escape and do an injury the owner is liable, no matter what diligence he may have used to confine it. The negligence consists in keeping the animal after notice.

The knowledge which has been spoken of need not be an actual personal notice to the owner, but the knowledge of his servant or his wife may be sufficient to charge the owner with knowledge; and in one case it was held that a dog may be brought into court for the inspection of the jury on the question of disposition.

It is upon the same principle of law, that the owner is made liable for a trespass committed on land by his domestic animals. It is known to be the nature and disposition of such animals to roam, and it is therefore the duty of their owner to restrain them, and if he fails to do so he is liable for the trespass, even though he did not know that they had ever trespassed before.

The rules of law which have now been stated have become elementary and have been laid down and enforced in some very remarkable and pointed cases, both in this country and in England. The dogs have done more mischief than any other domestic animals and their cases have been oftener before the courts, and some judges have been inclined to the opinion that if a person chooses to keep a dog which is savage and dangerous, he does so at his peril and is liable for any injury he may do without any proof of *scienter*. There is great reason for holding this to be the rule, for in such a case the dog is in the class of animals that are of a ferocious nature and disposition, and ought to be looked upon the same as a lion, a tiger or a bear. It is not necessary, however, to go so far as that in this case for the testimony was ample to show that the owner of the dog had full notice of his vicious propensity. The person who sold the dog to the defendants' superintendent testified that he told him this was an awful bad dog, that he bit everybody and everybody knew he was bad. This knowledge, together with the knowl-

edge that the dog bit the superintendent, must be imputed to the defendants; and as this testimony was uncontradicted it fully established the *scienter*. It is true this is ordinarily a question of fact for the jury, but when the fact is fully established by testimony which is not contradicted it ceases to be a question of fact for the jury and becomes a question of law for the court. The same may be said about the injury. The testimony was uncontradicted that the dog did the mischief and that he belongs to the defendants. The entire testimony, then, upon which the recovery depended was uncontradicted, and left nothing to be done but for the court to determine whether the plaintiff was entitled by law to recover. This being so we think the court did right, under the rules which have been before stated, in determining that the plaintiff was entitled to recover, and that there was nothing for the jury but the question of damages.

A remaining question is, whether there was any thing in the relation which the parties occupied toward each which prevented a recovery? The dog was kept by the defendants in their factory yard as a watch dog, and it was proved that he was let loose at night and that it was the duty of the engineer to chain him up in the morning. The plaintiff was, at the time of the injury, in the employ of the defendants and the defendants now insist that, inasmuch as it was through the neglect of duty on the part of the engineer that the dog was loose and injured the plaintiff, the defendants are not liable within the cases which hold that the master is not liable for injuries to his servant, which result from the negligence of a co-servant. We have seen above that after the defendants had knowledge of the vicious propensities of this dog, it was their duty to keep him secure at their peril. Their liability after that did not rest upon any question of diligence or of negligence in keeping the dog secure. The negligence consisted in keeping him at all. If he got loose and did mischief after knowledge, they were liable on proof of the injury and of knowledge. Therefore, whether or not the engineer was negligent in not chaining up the dog was entirely unimportant. He was not secured and he committed the injury, and no proof of negligence was necessary. That question was not in the case at all.

It was also claimed that, inasmuch as the plaintiff knew that the

dog was ferocious, he took the risk of injury by him by continuing in the defendants' employ. In the law, the right of a person to keep a watch dog to guard his property is placed upon the same ground as the right to set a spring gun for the same purpose, and both these devices may be justified for the purpose of preventing a felony. But there is no rule or principle of law that will justify either of these devices, so far as a servant is concerned, in the legitimate discharge of his daily duties. The defendants had no right to submit the plaintiff to the danger of attack from the dog, and there was no implied obligation, on the part of the plaintiff, to take any such risk.

The foregoing views lead to an affirmance of the judgment.

Judgment affirmed, with costs.

Present — BARNARD, P. J., and DYKMAN, J. GILBERT, J., not sitting.

Judgment affirmed, with costs.